The next case is number 21-2434, Garrett Kajmowicz v. Matthew Whitaker. Mr. Woofter. Thank you, your honors, and good morning. I'm Daniel Woofter, appearing on behalf of the plaintiff appellate, and I would like to reserve two minutes for rebuttal, please. Granted. The government's bottom line in this case is breathtaking, and I use that phrase advisedly. It asserts that the appointments clause and the statute's governing vacancies are effectively unenforceable. Everyone can agree, I think, that our facts at least test the outer boundaries of the Constitution and the governing statutes. For the first time in American history, the president displaced the Senate-confirmed deputy with a mere employee and did so by overriding the succession law governing that specific office. But the government says, even assuming those actions egregiously violated both the appointments clause and the vacancies statutes, the courts are powerless to do anything about it. It argues that any time a designation is challenged, the president can name a successor who merely needs to quote-unquote ratify his predecessor's actions. And given that these challenges are to temporary acting appointments, which almost always last just a few months, every case will surely become moot during the years it takes to litigate the challenge if the government's position is correct. In fact... Counsel, let's look at the statutory language regarding function and duty. That, to me, is where the rubber meets the road. Talks about acts required to be performed by the attorney general and only the attorney general. Now, you believe that function and duty would be anything performed by, to be performed by, or that the attorney general has the authority to do. But doesn't your reading read out of the statute the words required to be performed by the attorney general? We don't think so, Your Honor, because if you look at the National Firearms Act and the Gun Control Act, both of them require these acts to be done by the attorney general. And they're delegable. In your reply, you even note that, that they're delegable to the ATP. Oh, yes, indeed. They are delegable. But the statute does not say non-delegable, Your Honor. That's my question. Doesn't required to be performed by the attorney general and only the attorney general mean non-delegable? We don't think so, Your Honor, and here's why. Required to be performed by the attorney general. The National Firearms Act and the Gun Control Act require these duties to be performed by the- And only, parentheses, and only that officer. Yes, Your Honor. They are required, the statutes require them to be performed by the attorney general and the statutes only name the attorney general. Nothing in the statute says that they can't be delegable. And in fact, that's the exact reasoning of Judge Moss' opinion in LMM. And the reason we know this to be the case is because both sides have pointed to language from the Senate report. And in that Senate report, the district court and the government erroneously relied on language suggesting that the statute needed to apply only to non-delegable duties. But that was language inserted by the minority view, which was rejected by the Senate. From a practical standpoint, I just can't comprehend the argument you're trying to make. The role of the attorney general in the Justice Department is as vast as any role of any executive in any department in Washington. And I can relate that to the role I served in before I became a judge. I was the attorney general of Pennsylvania. But there was only one duty that I couldn't delegate. And it's specified in the statute that I could not delegate the responsibility of reviewing applications for electronic surveillance. I couldn't do that. I had to do them all. But everything else was delegable. I mean, isn't this, as Judge Rendell has asked, uh, unless there's specific language like we had in Pennsylvania, doesn't the attorney general have the right to delegate as he did in this case? We think that only helps our argument, Your Honor, because the upshot of that view is that Section 3348's enforcement provision would have no effect whatsoever as to every cabinet officer in the United States. Because every cabinet officer has an organic statute that vests with them the duties of the office and allows them to delegate all of those duties. And we just don't think that Congress would have put in an enforcement mechanism that would have no operation as to the highest agency official in every department. And the reason we know this to be the case is that even the D.C. Circuit has quoted and recognized that the reason that Congress inserted this provision into the FERA when it amended the D.C. Circuit did in Doolin. In Doolin, there was an act that was challenged, later ratified, and the court said, you know what? Because of the ratification, we don't need to reach the appointments issue. The ratification cures the defect. Congress then passed 3348. Well, when you look at the duty in Doolin, it was, like the statute here, required of the officer and only that officer, but, like the statute here, was also entirely delegable. So, and the district court never addressed this argument that we raised in our brief, and the government only points again to that Senate report's minority language saying that they wanted it to apply to non-delegable duties, but that minority of view was rejected for what they ended up putting in the statute. Hadn't the Attorney General, under President George W. Bush, already delegated the, uh, the power that's in question here to the Director of ATF? That's correct, Your Honor, but the, the... So, if it was not only delegable, but delegated, how can we argue, how could we argue that the action taken by Mr. Whitaker, uh, was in violation of the statute? Because, um, the source of the duty was not the delegation. The source of the duty is the statute. There are two provisions in the enforcement mechanism. In that delegation, under President Bush, it was improper? Absolutely not. We think if the ATF director had been the one to sign this rule, that there would be no challenge. But despite the DOJ's, like, encouragement of Mr. Whitaker to not sign this rule... I'm not sure I understand that. You're saying it would have been okay if the ATF did it, but it's not okay that the Attorney General, after Whitaker, did it? No, no, no, Your Honor. What we're saying is it would have been okay that the ATF director would have done it. It was not okay that an employee serving invalidly as the highest law enforcement officer of the United States signed it. He did it despite the government's insistence and advice of everyone in the department that he not sign the rule because it would be subject to a challenge like this. What about ratification, though? And that's where 3348 comes in. We think that the reason Congress put that in there is to not allow this maneuver, which was hap... which is exactly what occurred in Doolin. And the... How was it a maneuver when ATF could have done it? Initially, they could have done it. You're saying... you're saying that... you're saying that ATF could have done something that the lawfully appointed, nominated, Senate-confirmed Attorney General reviewed and decided to do. I apologize that I was unclear here. We don't think ATF could have ratified this either. We think ATF could have done it from the outset. Right, but ATF could have done it initially. But you're saying that... that Attorney General Barr couldn't do it. You're saying that the lawfully Senate-confirmed Attorney General is somehow deprived or dispossessed of the power to do something that he could have done by virtue of Mr. Whitaker's error? That's your argument? And that's the upshot of 3348, Your Honor. It seems to... it would seem to paralyze... I don't know, it... that's the upshot of 3348 because you... because of your non-delegability argument. Exactly, Your Honor. But I still don't understand... this gets back to Judge Rundell's initial question. I don't understand what work the parenthetical and only that officer does under your reading of that provision. Well, there are two readings here. There are two readings. The work is being done because under the government's reading, no work is being done by the statute at all as to the cabinet heads of every officer. As under our reading, this provision would not apply to any number of statutes that we've cited in our opening brief where a statute gives authority to do acts to multiple officers. So, for example, to take Judge Fischer's example, in the United States, multiple officers can authorize certain kinds of wiretaps, but only those few. Now, if one of those... That's where required by comes in. I know what you're saying. If... didn't you use required by? It says vests authority in that person and that person only. Then if it vested authority in multiple persons, then I see your reading. But once you add required by, it's a very specificity. There's an exclusivity there. Well, Your Honor, if we disagree on that point, I'm not going to be able to convince you otherwise. But as a practical matter, you are nullifying ratification, are you not? Only as to duties. We are not nullifying ratification. Look, I would like to point out here that we're only talking about a situation where an act is taken by an invalidly serving officer who's serving in violation of the FVRA. When an officer is not serving in violation of the FVRA, ratification can happen. And it's not about the invalidness of the... But isn't that the point? The whole point of this section and ratification is presuming that it was done under an officer that's not acting properly. So you're really nullifying the whole concept of ratification in that event. Not at all. Because when you have a statute where there are multiple officers that are named in it, and one of them that's invalidly serving takes that action, a different officer could ratify it and 3348 would not apply. We've pointed to statutes where duties are assigned by Congress to multiple officers. We've also pointed to statutes where duties are assigned by Congress to multiple agencies. Why does that really make any sense? More than one officer, and then you can't ratify. It makes more sense to say, well, if it's something that could have been delegated, then, you know, we're not going to nitpick the fact that this person wasn't valid because he could have given it to anybody. We really don't care. But if it's something where he couldn't have delegated, then we really care. Your view would be correct, Your Honor, if you ignored what the Senate said it was doing and what it actually said in the statute. And again, what the Senate said was that it was attempting to overrule Doolin. Your view is that they did not effectively do so with this provision. This provision also does not use the word non-delegable. It uses these terms. It actually rejected that language that was suggested from the minority view. And Congress doesn't enact sub silencio language that it's rejected previously. The statute is a reaction to the fact that people are serving, and they shouldn't be serving in this capacity, and we've got to do something about it. But it's not specific to this, to what the law ended up being, really. I don't understand exactly what that means when it comes to what they're saying they're doing in the particular provision that they're actually writing on. It's not a general discomfort with Doolin. They, quote, overrule Doolin in the Senate language with what they put in the statute. And, you know, if we disagree on that, that's fine. I can't convince you otherwise. But your view would be that this provision is a nullity as to any of the highest officers in this land. And we just don't think that that's, especially when the White House issued a veto threat over, because of this very provision, saying that it would paralyze the government to use Judge Hardiman's language from earlier. The White House loves to issue veto threats. I don't think that's true. And the senators who were trying to convince the White House not to veto it did acknowledge. They said, look, we acknowledge this is a tough enforcement mechanism, but you won't be paralyzed. Just follow the law. A quick question. If we disregard the FVRA's anti-ratification provision, do you concede that Attorney General Barr's ratification was otherwise valid under our precedent in advanced disposal? Which one is advanced disposal, Your Honor? I apologize. The three prongs to satisfy ratification. Oh, no, Your Honor, because of the voluntary cessation doctrine. And we put that in this particular case. And I want to be clear here, and I hope I'm not. I'm just trying to answer your question. I'm not trying to take away my rebuttal here. When Mr. Barr came into office, he ratified Whitaker's rule in a six-sentence regulation expressly because of the challenges to Mr. Whitaker's designation as acting Attorney General. And I'm quoting from what he said here. The final rule has become the subject of litigation in which parties have argued that Mr. Whitaker was not validly serving as acting Attorney General. Although I believe that the challenges to Mr. Whitaker's designation lack merit, I elected out of an abundance of caution to ratify the rule. What they have done is they have, and this occurred three days before oral argument was going to occur in the D.C. Circuit on the merits of this question. I have to give credit to my friends on the other side. The government has incredibly effectively avoided any merits review of this question at the Court of Appeals. And if it's the fact that the voluntary cessation does not apply in the context of ratification, then the voluntary cessation doctrine will never apply in a case raising an appointments challenge like this. Then you disagree with the D.C. Circuit in the Guides case? We do, Your Honor. And we actually think that that even conflicts with prior precedent from that circuit. For instance, in Roan, where a lethal injection protocol was challenged. And then aside from, oh, I apologize. That actually goes to whether or not a third party is responsible for the cessation of the, I take back what I said. We do disagree. All of the prior precedent that came before Getty's occurred after the appointments challenge had been resolved. The ratification is never, has had never been a proper way to scuttle an appointments challenge like this. Thank you. We'll hear you on rebuttal, Mr. Wooster. Thank you, Your Honor. Ms. Carroll. Good morning. May it please the Court. Sarah Carroll on behalf of the government. Uh, after Acting Attorney General Whitaker left office, Attorney General William Barr, after his Senate confirmation, validly ratified the rule at issue here. And that is enough to resolve this case. As Judge Rendell noted, the offset, the language of this statute is very clear. It applies to duties that are required to be performed by a particular official and only that official. Here, issuance of this rule was simply not something that is required to be performed by the Attorney General. No reference to delegation at all. And we've got the, uh, LL&M case and the, uh, couple of, uh, Ash Asylum Works case. A lot of these courts have said, wait a minute, it doesn't say anything about delegation at all. So how can we read that into the statute? Uh, the statute does not use the term delegation itself. I think that by saying required to be performed by a particular official and only that official, that means kind of the same thing. And every group of senators that contributed to the Senate report, uh, referred to it in terms of non-delegable duties. And Congress made clear that it was, uh, acutely concerned. It wanted to take steps. I, of course, in the FVRA to sort of rein in what it had seen happening, but it was, Congress was very clear that it was acutely concerned about not causing administrative paralysis, allowing agencies to continue to do their work when the vacancies that inevitably arise occur. So Congress imposed this strong remedy, you know, where it applies, the ratification bar is, is strong medicine, but Congress limited it to the instances in which I think as, as you were noting, Judge Rendell, in which, uh, well, it was more of a question than a note. I'm sorry. No, referring back to something you said, uh, during, during my colleagues, uh, discussion that, uh, because the ratification bar applies only where Congress has said that a particular person and only that person has to do something. Those are kind of the, the instances, uh, in which the Senate's stake in, in the, the identity of, uh, you know, having a role in who's, uh, who is doing the thing is at its apex. By contrast, where Congress has allowed something to be delegated in the government, as is the norm, uh, Congress wanted to let things proceed and didn't want to go around invalidating and barring ratification of things that acting officials. Don't all, it seems to me, all the executive branches have delegation statutes where it authorizes the secretary to delegate the duties and responsibilities, uh, and your, the, your opposition contends that, uh, the government's interpretation in this case would in effect nullify the Federal Vacancy Reform Act's mechanism, uh, if we approved the delegation here. What's your response to that? Uh, it would not nullify the FVRA. It would, the FVRA's ratification bar would apply where Congress intended it to, which is where Congress uses specific language in a statute to show that it, uh, does not want anyone other than the named official to do something. So for example, in, uh, the stand up for California case, the DC circuit noted some statutes that said that a particular official had quote, exclusive authority to do something. Uh, the, the FVRA itself uses the kind of language that Congress can use where it wants to put the ratification bar in play. 33, 45, a two and three say that the president parentheses and only the president can designate particular classes of acting officials. So I, I, I think you're right, Judge Fisher. I agree that most duties of, uh, agency heads are delegable, but that is the way Congress wanted it to work because Congress did not want to paralyze agencies by barring ratification, you know, kind of almost across the board. Let's assume in this case that the attorney general, in this case, uh, President Bush's firearms act to the ATF. Would that change your position in this case? Uh, no, it wouldn't your honor for a couple of reasons. Uh, first, uh, the duties of the attorney general are also delegated to the deputy attorney general. So even if ATF were taken out of the picture, uh, the deputy attorney general would have still been able to do this. So it wouldn't have been a duty required to be performed by the attorney general and only the attorney general. And I think there would also be a good reading that under the statute, that there hadn't been a delegation to the deputy attorney general. Right, right. So no delegation at all. I still think there would be a good argument that, uh, if something is delegable, even if it hasn't been delegated, it's not something that's required by statute to be performed. Would you have to get that far in this case? Uh, no, absolutely not your honor, because here, uh, We could rule for you by finding that since this was delegated, uh, that, uh, the action taken by Whittaker was permissible and it took the action, the duty and function out of, uh, the, the anti-ratification permission. Could we not? Uh, yes, absolutely. Your honor, the court could do that. Um, and I think that that would be a completely, completely reasonable way to resolve this. Uh, could attorney general Barr have ratified it after the bump stock ban had gone into effect? I, I don't know of any reason why not your honor. I think so. Yes, uh, here he did it, I think a couple of weeks before it went into effect, but I don't, I still, it's still, I, the ratification bar wouldn't apply any differently. And I don't think the criteria that the court, uh, announced in advanced disposal services would apply differently either. Let's go back to, uh, Judge Moss's opinion in LL, LMM. Um, it seemed to be an opinion that, that relied heavily on legislative purpose and history. Would you agree? Uh, yes, I would agree with that. But there were also a couple of textual hooks there. The fallback provision of 3348B, uh, which it said would be almost meaningless under your reading and 180 day look back provision of, uh, 3348A2B2, uh, which it said suggests the function or duty need not be exclusive to a particular office. What's your response to, to those textual hooks that, that Judge Moss latched onto? Well, my first response, your honor, would be that Judge Moss himself, a little while later in Northwest Immigrant Rights Project, uh, held that ratification was permissible in a situation like the one we have here. In LLMM, Judge Moss was focused on the fact that although the duties there were delegable, uh, they had not been delegated, I think, within, uh, more than, um, you know, outside the 180, uh, day look back period. By contrast, in Northwest Immigrant Rights, Judge Moss said, yes, these duties are delegable and they in fact have long been delegated. So this is something that is ratifiable. So I think we would not, uh, you know, sign on to all of the analysis in LLMM, uh, but the, the point is that even Judge Moss who wrote LLMM would, I think, rule in our favor here because just as in Northwest Immigrant, Immigrant Rights, uh, the duties here were delegable and have long been delegated. Is the ratification moot this case or is it to decide the case for us on the merits? It decides the case on the merits, Your Honor. We have not argued that the case is moot. The rule is still in place. Plaintiff is still unable to possess bump stocks. He's still suffering the injury that, uh, provides presumably his standing to bring this case. Uh, and as the DC Circuit has said in Gwedis and a bunch of other cases, uh, ratification just resolves the merits of a challenge to the authority of the official who took an act. How do you read the Reform Act as a reaction to, to Doolin? Um, your, your colleague seems to say, well, of course we have to give it a broad reading because it's a reaction to, to Doolin, but I'm not sure that I read Doolin as, I mean, Doolin looks to me kind of an unfettered ratification case, uh, so the Reform Act might have been a, you know, a reaction. What's, what's your view as to how we should look at the Reform Act as a reaction to Doolin? Uh, the Reform Act, um, expressed, uh, you know, Congress certainly had Doolin in mind. I think one of the main aspects of Doolin that Congress was reacting to was the DC Circuit's holding that, uh, that time periods, permissible time periods of acting service under the Vacancies Act, the predecessor of the FVRA, uh, were measured from the date that an acting official took office as opposed to the date that the vacancy arose and Congress clearly changed that. Uh, it's true that, uh, there was also a ratification aspect of Doolin, but Congress, uh, responded to that by imposing the narrow ratification bar that we have here. And Congress, I think, you know, uh, worried about doing anything broader because it didn't want to cause administrative paralysis. So it enacted a remedy, but it was a sort of careful and targeted one. Um, I'm happy to answer any other questions the Court has. We, of course, also think Whitaker was validly designated and I would be happy to address that, but I also don't want to use up the Court's time. And in ratification, if we find ratification to have been valid, I assume we do not address the underlying constitutionality under the Appointments Clause. Would that be your position? That would be our position, um, right. By deciding the case on ratification grounds, the Court would not need to decide the validity of Whitaker's, uh, designation, which raises both constitutional and statutory issues. What's your response to Mr. Wooster's argument, as I understand it, and he can correct me if I misunderstand it, that, um, that your interpretation of a function or duty as required by statute to be performed by the applicable officer and only that officer would have the sort of inverse effect of what Congress intended by regulating the lowest level, uh, employee, lowest level officers or people in an organization like the DOJ and, and not do anything to deal with the, the people near the top of the power structure? Well, I think that, uh, Congress was taking kind of a pragmatic view and as to any, any official within the scope of the FVRA, if Congress says in a statute that a duty, uh, may not be delegated or that someone has exclusive authority to do something, uh, that, that means that the ratification bar applies regardless of the seniority of that official. But I think as Judge Fisher was noting, the Attorney General and other agencies had, agency heads have really vast power and it's kind of the norm for them to delegate authorities. And if they weren't allowed to do that, or if things that they had delegated, uh, were after the fact invalidated and couldn't even be ratified, that would really cause just the kind of, uh, administrative shutdown and paralysis that Congress was seeking to avoid when it enacted the FVRA. I'm happy to answer any further questions. Okay. Thank you very much, Ms. Carroll. Uh, Mr. Wooster, rebuttal. Thank you, Your Honors. I want to start, uh, really quick just by reading the quote from the D.C. Circuit on what they said Doolin, uh, what Congress was trying to do with Doolin. In response to Doolin, the FDR, the FVRA renders actions taken by persons serving in violation of the Act Void ad initio. Quoting from Congressional Record S6414, explaining that FVRA imposes a sanction for noncompliance, thereby overruling several portions of Doolin. And from the Senate report, the committee finds that the ratification portion of Doolin demands re- legislative response. In response to our argument that essentially no Cabinet officer's, uh, duty is non-delegable, the other side didn't point to a single statute. They suggest that stand up for California points to a number of statutes where it makes it, uh, non-delegable. But as, uh, Your Honor, Judge Hardiman pointed out, every single one of those is as to a lower level officer, not to the head of the agency. Um, I believe there is one, uh, that we've been able to find that has to do with the Secretary of the Interior approving for some kinds of adoptions that happen on Indian lands. And we cannot imagine that what Congress was trying to accomplish with this provision was to target that exact duty that's non-delegable by the Secretary of the Interior. Um, the, uh, my friend on the other side suggests that this is a strong remedy. It is hard to understand how this is a strong remedy when it doesn't apply to Cabinet officers. Um, and, and as Your Honor suggested, it would only apply to low-level officers. It would, it would be strong only as to the timing issue she referenced, right? And that would be it. Yeah, and that, that can't, you know, and, and because of their merits argument as to what 334A allows, um, in terms of appointing a different officer, the options between the two, they don't even suggest the timing is a strong requirement. So, for, so for example, if Deputy Attorney General Rod Rosenstein had continued in his acting capacity, my friend on the other side argues that the time limits themselves would not apply, uh, unless there are other questions I can see that I'm out of rebuttal time. Thank you very much. Thank you, Your Honor. Mr. Wolfter, thank you both for excellent, uh, briefing and oral argument. Court will take the matter under advisement.